Filed 4/9/26; Certified for Publication 4/28/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KAI-LIN CHANG,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SOUTHERN CALIFORNIA<br>PERMANENTE MEDICAL GROUP,<br><br>    Defendant and Respondent. | B340770<br><br>(Los Angeles County<br>Super. Ct. No. 22CHCV01194) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gary I. Micon, Judge.  Affirmed.

Alexander & Yong, Jeffrey S. Yong; The Arkin Law Firm and Sharon J. Arkin, for Plaintiff and Appellant.

Manning Gross + Massenburg, Brent M. Karren, Carrie S. Lin and Eli J. Drummond for Defendant and Respondent.

———————————————

Plaintiff Kai-Lin Chang appeals from a grant of summary judgment in favor of defendant and respondent Southern California Permanente Medical Group (SCPMG). Chang sued SCPMG over a vehicular accident allegedly caused by SCPMG employee Brittany A. Doremus while she was driving to work in the morning. The trial court ruled SCPMG was entitled to summary judgment under the "going and coming rule," which exempts employers from liability for employee torts committed while commuting to and from work.

On appeal, Chang contends the trial court erred in granting summary judgment because SCPMG failed to offer admissible evidence negating the possibility Doremus was talking or texting with coworkers on her employer-issued cell phone at the time of the accident. Alternatively, Chang argues the going and coming rule should not apply because SCPMG allowed Doremus to work from home as well as at her office, and thus she was not commuting but traveling between job sites.

It was not SCPMG's burden to negate all possibility Doremus was working at the time of the accident. It was sufficient that SCPMG made a prima facie showing Doremus was not working, a burden SCPMG met through Doremus's deposition testimony. The burden then shifted to Chang to provide contradictory evidence demonstrating a triable issue. Chang did not meet this burden.

We disagree that Doremus sometimes working from home converted her home to a second worksite for all purposes. Her uncontradicted testimony established that on Mondays, the day of the week the accident occurred, she did not work from home but at her office. Thus, at the time of the accident, she was

2

engaged in an ordinary morning commute, not transitioning between worksites.

Accordingly, we affirm.

## BACKGROUND

### 1.    *Complaint and motion for summary judgment*

Chang filed a complaint for negligence against Doremus and SCPMG.[1]  The complaint alleged that on Monday, September 12, 2022, at approximately 8:40 a.m., Chang was riding his bicycle on Victory Boulevard in West Hills.[2]  As Chang turned onto Valley Circle, Doremus suddenly made a left turn in her vehicle, crossing directly into Chang's path.  Chang collided with Doremus's vehicle, suffering injuries requiring hospitalization. The complaint alleged Doremus was operating her vehicle in the course of her employment at the time of the accident, and therefore SCPMG was liable under the principle of respondeat superior.

SCPMG moved for summary judgment, contending Doremus was commuting to work at the time of the accident, and therefore, under the "going and coming rule," was not acting within the course and scope of her employment.  SCPMG argued it therefore was not liable for Doremus's alleged tort.

In support, SCPMG offered excerpts from Doremus's deposition transcript.  Doremus testified she was a palliative care

---

[1]  The complaint named a third defendant later dismissed from the action.

[2]  The complaint does not expressly state September 12, 2022 was a Monday, but we take judicial notice of that fact. (Evid. Code, §§ 451, subd. (f), 459, subd. (a).)

doctor employed by SCPMG at the Woodland Hills Medical Center of Southern California.  On Mondays and Tuesdays she worked in her office at the medical center.  SCPMG permitted her to work from home half of the day on Wednesdays.  Thursdays and Fridays she worked with patients at the medical center's hospital.  When she was on call on nights or weekends, she would work from home.

Doremus testified that on the day of the accident, she left home around 8:30 a.m. to drive to her office at the medical center.  At the moment of the accident, she was turning into a shopping center's parking lot to drop off her children's Halloween costumes at a dry cleaner.  This was a personal errand unrelated to her work.  Following the accident, she called 911, then sent a group text message to the nurse and social worker she worked with telling them she had been in an accident and requesting that they cancel her appointments for the day.

Doremus did not recall participating in any telephone calls the morning of September 12 before the accident.  She testified she was not doing anything work-related at the time of the accident.  The vehicle she was driving was a personal vehicle unrelated to her employment, and SCPMG never directed her to use the vehicle as opposed to another mode of transportation.

In further support of its summary judgment motion, SCPMG provided a text message log from Doremus's wireless carrier covering activity between 8:30 and 9:30 a.m. on the day of the accident.  The log indicated no text messages between 8:30 and 8:44 a.m.  Between 8:44:17 and 8:44:55, Doremus sent or received 11 text messages, although the timestamps suggest that number might double-count single messages sent to multiple

4

recipients.[3]  Between 8:45:01 and 9:21:52 she sent or received another 30 text messages, some of which again might be double-counts of group texts.  SCPMG provided a screenshot of a text chain of eight messages beginning at 8:44 in which Doremus informed her coworkers she was in an accident and would not be coming in.

SCPMG also provided a call log for Doremus's cellular phone.  The log lists a call to 911 at 7:39:42 AM on September 12, 2022,[4] followed by an incoming call from her husband at 8:44:14 and a series of calls from Doremus to her husband from 9:10:30 to 9:32:30.  Doremus testified after her husband called her, she had to call him back several times because the cellular reception was poor.

## 2.    *Opposition*

Chang opposed the summary judgment motion, arguing there was evidence Doremus was texting with coworkers "mere

---

[3]  For example, the log lists four messages all sent at 8:44:17, with two of the messages sent to one number and two to another.  Given the unlikelihood that Doremus sent four separate text messages in the span of a second, it may be the log counted a single text sent to two recipients as two separate texts.  This conclusion is supported by the screenshot of Doremus's text chain indicating two recipients, as well as her deposition, in which she testified she initiated a group text with two coworkers after the accident.

[4]  The record does not reveal why the call log indicated Doremus placed the 911 call an hour before the accident.  In its order granting summary judgment, the trial court said the time stamp on the 911 call "is unexplained and has not been tied to the accident, which occurred an hour later."

seconds before the collision," and thus there was a triable issue whether Doremus was acting within the scope of her employment at the time of the accident. Chang offered what he identified as a "template" of Doremus's work schedule, which listed on several mornings at 8:30 a.m. a "Team Patient Conference," including the morning of September 12. In a footnote, Chang distinguished the "template" of Doremus's schedule from Doremus's "actual work schedule"; the latter would include patient names and summaries of their conditions. Chang complained that SCPMG had never produced the "actual schedule" despite Chang's discovery requests. Chang nonetheless contended the template created a triable issue whether Doremus was participating in a "Team Patient Conference" at the time of the accident. Chang also pointed to the text message log indicating the "flurry" of texts between Doremus and her coworkers at 8:44 a.m., which Chang argued raised questions about whether Doremus was texting with coworkers before the accident.

In further support, Chang contended the evidence indicated Doremus could perform her work remotely. Chang interpreted Doremus's employment agreement, which Chang provided as an exhibit, to not limit her to particular work hours, and to "financially incentivize[ ] her . . . to work more than the 'full-time schedule.' " The agreement also did not restrict where Doremus could work, and Doremus testified she performed work both at her office and at home. Chang offered evidence SCPMG provided its physicians with cellular phones, on which special SCPMG communication software was installed.

Chang argued some of the case law offered by SCPMG regarding the going and coming rule was inapposite because the cases concerned workers' compensation, "and thus has no

6

applicability in tort cases." Noting case law requiring evidence such as phone records to establish a defendant motorist was engaged in work at the time of an accident, Chang argued Doremus's text log satisfied this requirement because it showed Doremus and her coworkers were sending each other text messages around the time of the accident.

Chang additionally argued the going and coming rule did not apply because SCPMG "derived an incidental benefit from Dr. Doremus' use of her personal vehicle because it allowed her to commute seamlessly from her two primary locations where she conducted work — her home office, and her office at Kaiser Woodland Hills." Chang contended Doremus could do her job anywhere, but SCPMG required her to "take on the risk of traveling" by commuting to work.

Chang also contended SCPMG's evidence was inadmissible because the attorney declaration to which SCPMG's evidence was attached failed to authenticate the evidence properly. Chang filed evidentiary objections to all of SCPMG's evidence as hearsay and as lacking foundation, authentication, and personal knowledge. The evidence to which Chang objected included Chang's complaint, Doremus's deposition transcript excerpts, the screenshot of Doremus's text chain with her coworkers, Doremus's telephone call and text logs, Doremus's employment contract, and SCPMG's benefits handbook.

### 3. *Trial court's ruling*

Following a hearing, the trial court granted the motion for summary judgment. The court found, "There is no dispute in this case that Doremus was commuting to work. In fact, when the accident occurred, she was turning into a dry cleaner's parking lot to take care of a personal errand unrelated to work.

7

[Citation.] It is clear that the going and coming rule would apply in this case, and Doremus was not acting in the scope of her employment."

The court further found no exception to the going and coming rule applied. Doremus was not driving a vehicle provided or required by SCPMG, nor did the vehicle provide an incidental benefit to SCPMG. Doremus was not running a special errand for her employer, but running a personal errand during her commute to work.

The court found the evidence did not support Chang's contention Doremus was engaged in work at the time of the collision. The court noted the call and text logs did not reveal the content of the communications, only that they occurred, and the screenshot SCPMG provided indicated Doremus sent the text messages after the accident to inform her coworkers she would not be in that day.

The court overruled Chang's evidentiary objections, noting Chang himself relied on the call and text logs in making his arguments, and thus "agreed to the accuracy of those documents."

The court entered judgment in SCPMG's favor. Chang timely appealed.

## DISCUSSION

### A. Principles of Summary Judgment

" 'Summary judgment is appropriate only "where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " [Citation.]" (*Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 76 (*Barenborg*).) A defendant moving for summary judgment has

8

" 'an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] . . . 'Once the defendant meets the foregoing [initial] burden [of production], "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action . . . ." [Citation.]' [Citation.]" (See *Stokes v. Forty Niners Stadium Management Co., LLC* (2024) 107 Cal.App.5th 1199, 1213–1214.)

" 'We review the ruling on a motion for summary judgment de novo, applying the same standard as the trial court.' [Citation.]" (*Barenborg, supra*, 33 Cal.App.5th at p. 76.) " '[T]he weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard. [Citations.]' [Citation.]" (*Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512, 521.)

## B. Respondeat Superior and the Going and Coming Rule

" 'Under the doctrine of respondeat superior, an employer is liable for the torts of its employees committed within the scope of their employment. [Citation.] . . . . ' [Citations.]" (*Feltham v. Universal Protection Service, LP* (2022) 76 Cal.App.5th 1062, 1068 (*Feltham*).)

"An employee 'is generally *not* considered to be acting within the scope of [her] employment when going to or coming from . . . her regular place of work.' [Citation.] Under this rule — known as the going and coming rule — ' " 'employers are generally exempt from liability for tortious acts committed by employees while on their way to and from work because employees are said to be outside of the course and scope of employment during their daily commute.' " ' [Citation.] The

9

theory behind the going and coming rule is that the employment relationship is suspended from the time the employee leaves work until she returns or, put another way, that in commuting, the employee is not rendering service to the employer. [Citation.] "Normally the going and coming rule applies in cases where an employee ordinarily works at a particular location and the job duties do not ordinarily include driving on the job.' [Citation.]" (*Feltham*, *supra*, 76 Cal.App.5th at pp. 1068–1069.)

Courts have recognized exceptions to the going and coming rule " 'where the trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force.' [Citation.]" (*Jeewarat v. Warner Bros. Entertainment Inc.* (2009) 177 Cal.App.4th 427, 435–436.) For example, the rule does not apply if " 'use of a personally owned vehicle is either an express or implied condition of employment,' " or the employee " 'make[s] the vehicle available as an accommodation to the employer and the employer has "reasonably come to rely upon its use . . . ." ' [Citation.]" (*Moradi v. Marsh USA, Inc.* (2013) 219 Cal.App.4th 886, 895.) It does not apply if the employee "is engaged in a 'special errand' or a 'special mission' for the employer." (*Jeewarat*, at p. 436.) To the extent an employee combines personal business with work duties while driving, or " 'attend[s] to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer.' [Citations.]" (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 970.)

10

**C.    The Going and Coming Rule Applies In This Case**

Chang raises two claims of error.  First, he argues SCPMG did not make a sufficient prima facie showing below of the nonexistence of a triable issue of material fact, and therefore the trial court should have denied summary judgment rather than shifting the burden of production to Chang.  Second, he argues the going and coming rule should not apply in this case because Doremus was not a typical commuter traveling each day from home to office, but rather was a "hybrid" worker who performed her work outside normal business hours at different locations including her home.

**1.    The trial court properly shifted the burden to Chang, and Chang did not meet his burden**

Chang asserts that to prevail on summary judgment, SCPMG must "negate any possibility that Doremus was not functioning in the scope of her employment" at the time of the accident.  Chang contends SCPMG's attempt to do so through Doremus's call and text logs and the screenshot of Doremus's text chain with her coworkers fails because that evidence was unauthenticated and hearsay, and the trial court erred in admitting it.  If arguendo that evidence was admissible, Chang argues it nonetheless fails to eliminate the possibility Doremus was communicating with coworkers at the time of the accident.

Chang misconstrues the parties' respective burdens. Instructive is *Miller v. American Greetings Corp.* (2008) 161 Cal.App.4th 1055 (*Miller*), which similarly concerned whether a driver was acting in the scope of his employment when he struck someone with his vehicle.  (See *id.* at p. 1062.)

11

In *Miller*, the tortfeasor driver, as part of his job for the defendant employer, visited stores throughout Los Angeles County to inspect the installation of greeting card stands, and "spent much of his time talking on his cell phone" coordinating installation projects. (*Miller*, *supra*, 161 Cal.App.4th at p. 1058.) The driver testified at deposition, however, that on the morning of the accident he had taken the day off and was on a personal errand. (*Id.* at p. 1061.) The Court of Appeal affirmed a grant of summary judgment in favor of the employer because the plaintiffs "had no evidence to contradict" the driver's testimony. (*Id.* at p. 1062.) Although the plaintiffs proffered a cell phone record indicating the driver had spoken by phone with a coworker for one minute at 9:26 a.m., the evidence indicated the accident took place at 9:35 a.m. (*Ibid.*)

Also instructive is *Ayon v. Esquire Deposition Solutions, LLC* (2018) 27 Cal.App.5th 487, in which an auto accident plaintiff sued the tortfeasor's employer. The plaintiff's only theory of respondeat superior liability was that the tortfeasor and a coworker were discussing a scheduling issue for work on the phone at the time of the accident. (*Id.* at p. 495.) In moving for summary judgment, the employer offered testimony from the tortfeasor and the coworker in which they denied they were discussing work. (*Ibid.*) The testimony also established the tortfeasor only rarely made work calls outside of working hours and was social friends with the coworker. (*Ibid.*) The Court of Appeal stated, "The issue, therefore, is whether plaintiff presented substantial evidence to dispute their testimony." (*Ibid.*) The court held the plaintiff's contention that the tortfeasor had an incentive to lie to please her employer, without more, was insufficient to create a triable issue of material fact on

12

respondeat superior liability.  (*Id.* at p. 496.)  The court thus affirmed the grant of summary judgment.  (*Id.* at p. 499.)

In *Miller* and *Ayon*, the defendant employer did not have to negate all possibility the driver was acting in the scope of employment to shift the burden of production to the plaintiffs.  It was sufficient the drivers provided testimony that established they were not acting in the scope of employment.  The burden then shifted to the plaintiffs to dispute the testimony, which they failed to do.

The question before us, therefore, is whether SCPMG made a prima facie showing that Doremus was not acting in the scope of her employment at the time of the accident, and if so, whether plaintiff offered contrary evidence demonstrating triable issues.

SCPMG met its initial burden.  Contrary to his position below, on appeal Chang concedes the excerpts from Doremus's deposition were admissible.  As in *Miller* and *Ayon*, those excerpts alone satisfied SCPMG's prima facie showing.  Doremus testified she was driving from her home to her office at the time of the accident, and apart from the commute was not doing anything work-related.  She did not recall participating in any telephone calls prior to the accident.  She was driving a personal vehicle unrelated to her employment.  This evidence, if credited by a finder of fact at trial, would establish Doremus was engaged in an ordinary morning commute, and therefore the going and coming rule applies.  Thus, SCPMG met its initial burden, even if arguendo SCPMG's other evidence was inadmissible as Chang contends.

The burden therefore shifted to Chang to demonstrate a triable issue.  Below, Chang primarily relied on Doremus's calendar template listing a meeting at 8:30 a.m. the day of the

13

accident. Chang acknowledged in his opposition, however, that the calendar template is not the same as Doremus's actual work calendar, and therefore does not establish that Doremus, in fact, attended or planned to attend a meeting at 8:30 a.m. Chang does not identify any deposition testimony contradicting Doremus's claim she was not working at the time of the accident. Although on appeal Chang claims the call and text log evidence supports his position, he has maintained throughout this case that evidence is inadmissible. Chang cannot have it both ways. To meet his burden, Chang cannot rely on the call and text evidence he asserts is inadmissible.

We observe that, to the extent the call and text evidence was admissible, it does not advance Chang's claim. The call log indicates Doremus was not on a call at the time of the accident, and while the text log lists text messages with coworkers at 8:44, the screenshot indicates those texts occurred after the accident, when Doremus informed her coworkers she would not be coming in. In other words, the documentary evidence does not contradict Doremus's testimony that *when the accident occurred*, she was not communicating with coworkers or otherwise working.

Chang argues the evidence does not necessarily show Doremus was not working at the time of the accident. He criticizes the text log as too narrow, covering only the 8:30 to 9:30 time period, which he claims leaves open the possibility Doremus texted her coworkers before 8:30.[5] He argues the call and text logs do not eliminate the possibility Doremus had a second phone with which she communicated with coworkers.

---

[5] Chang's criticism of the text log is not well taken when it was his counsel who requested the log from Doremus's cellular carrier via subpoena.

14

We reiterate it was not SCPMG's burden to eliminate all possibility Doremus was not working at the time of the accident. Rather, it was Chang's burden to offer admissible evidence contradicting Doremus's testimony that she was not working. Although he speculates she might have been texting coworkers before 8:30, or calling from a second phone, he offers no evidence to support this speculation.

### 2. Uncontradicted evidence demonstrates the accident occurred during an ordinary commute subject to the going and coming rule

Alternatively, Chang argues the going and coming rule should not apply to Doremus's commute because much of her work was remote or virtual and she could perform it equally well at home or at the office. Chang argues this "creates triable issues of fact as to whether [SCPMG] obtained at least an 'incidental' benefit from literally everything Doremus did that was anything other than purely personal." Chang continues, "[SCPMG] could reach Doremus on her phone any time of the day or night, could demand her 'presence' at work even when she was at home and obtained what amounted to a 24-hour, seven day per week employee." "Doremus' scope of employment extended well beyond a 'typical' employee who goes to the employer's workplace, on a defined schedule, does their work and leaves, with no on-going obligations to the employer until the next working day." Chang contends, "[T]he hybrid nature of Doremus' work situation is more akin to traveling between worksites than it is to a 'common commute.' "

That Doremus might have sometimes worked outside of normal working hours or from home does not change the fact that at the time of the accident, Doremus's uncontradicted testimony

15

established she was driving from her home to her medical center office at the beginning of the workday as she did every Monday. Doremus was not driving at an unusual time, or providing a benefit to her employer beyond traveling to the office. Assuming arguendo her home at times could be deemed a worksite, that was not the case on the day of the accident, on which she was scheduled to work at her medical center office and not at home. Doremus was not shuttling between worksites but simply driving to work in the morning.

Chang's cited cases discuss the going and coming rule in the context of workers' compensation. The rule "provides that workers' compensation does not ordinarily compensate injuries sustained while the employee travels to or from work." (*Wilson v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 181, 184 (*Wilson*).)

We first observe that "workers' compensation cases awarding coverage do not necessarily provide reliable precedent for tort cases because the version of the [going and coming] rule applied in tort cases is more restrictive." (*Pierson v. Helmerich & Payne Internat. Drilling Co.* (2016) 4 Cal.App.5th 608, 619, italics omitted.) "Workers' compensation cases take a more expansive view of the test for course of employment than tort cases because the policies underlying the workers' compensation statute favor granting employee's coverage." (*Ibid.*) In the context of workers' compensation coverage, " 'any reasonable doubt as to the applicability of the going and coming doctrine must be resolved in the employee's favor.' [Citations.]" (*Ibid.*) Thus, "the analysis

used in workers' compensation cases should not be applied in tort cases as though it was controlling." (*Id.* at p. 620.)[6]

Even if arguendo workers' compensation case law were applicable in this case, our holding is not in tension with Chang's cited authority. In *Wilson*, our Supreme Court acknowledged the following exception to the going and coming rule for purposes of workers' compensation: "Work done at home may exempt an injury occurring during a regular commute from the going and coming rule if circumstances of the employment — and not mere dictates of convenience to the employee — make the home a second jobsite. If the home becomes a second business situs, the familiar rule applies that injury sustained while traveling between jobsites is compensable." (*Wilson, supra*, 16 Cal.3d at p. 184.) *Wilson* continued, "However, if work is performed at home for the employee's convenience, the commute does not constitute a business trip, since serving the employee's own convenience in selecting an off-premise place to work is a personal and not a business purpose." (*Ibid.*) Applying these principles, the Supreme Court held a teacher was not exempt from the going and coming rule simply because she brought work home with her after school, "[b]ecause [the teacher] performed work at home for her own convenience," and her school "did not require labor at home." (*Id.* at p. 185.) The teacher therefore was not entitled to workers' compensation for injuries sustained in an accident as she drove to school. (*Id.* at p. 183.)

In *Bramall v. Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 151, a secretary argued the going and coming rule

---

**6** Indeed, in his opposition below Chang argued workers' compensation cases had "no applicability in tort cases."

did not bar compensation for injuries she sustained in an accident during her evening commute because she was bringing deposition transcripts home to translate them from Spanish to English for her employer. (*Id.* at p. 154.) The Court of Appeal agreed. (*Id.* at p. 160.) Although the employer did not specifically instruct the secretary to perform the translations at home, her doing so was an implied condition of her employment. (*Id.* at p. 158.) This is because uncontradicted evidence demonstrated an implied requirement the secretary work at home beyond normal working hours: "[T]he work could not be properly performed in the after-hours environment of the office and [the] translation work at home was the normal practice approved by the employer." (*Id.* at p. 160.)

In *Zhu v. Workers' Comp. Appeals Bd.* (2017) 12 Cal.App.5th 1031, the Court of Appeal held the going and coming rule did not preclude workers' compensation to an in-home caretaker injured while bicycling between two private homes in which she worked. (*Id.* at pp. 1035, 1041.) The court reasoned the caretaker "was not commuting between her home and the workplace at a fixed time," and her "transit bestowed a direct benefit on [her employer], as [her employer] knew that [the caretaker] had to transit between homes to service more than one home a day." (*Id.* at p. 1041.) The court also noted the employer "was a direct beneficiary of [the caretaker's travel] since it allowed [the caretaker] to service more than one home per day." (*Id.* at pp. 1040–1041.)

Chang also relies on a Utah Supreme Court case, *State Ins. Fund v. Industrial Commission* (Ut. 1964) 15 Utah 2d 363 (*State Ins. Fund)*, cited in *Wilson* for the proposition that the going and coming rule does not apply "[i]f the home becomes a second

18

business situs." (See *Wilson*, *supra*, 16 Cal.3d at p. 184.) The question in *State Ins. Fund* was whether a widow was entitled to workers' compensation for the death of her husband while he was traveling from his apartment building to his office across town. (*State Ins. Fund*, at pp. 363–364.)

The evidence showed that in addition to the office to which the husband was traveling at the time of the accident, he maintained an office in another apartment within his apartment building. (*State Ins. Fund*, *supra*, 15 Utah 2d at p. 364.) Witnesses testified the husband's custom was to go to his apartment-building office every morning, and to make "frequent and periodic visits" to the office across town. (*Ibid.*) The morning of the accident he went to his apartment-building office, then returned to his home apartment half an hour later for breakfast. (*Ibid.*) At 8:00 a.m. he left for his office across town, and the accident occurred during that trip. (*Ibid.*)

The Utah high court acknowledged that had the husband "merely arisen that fatal morning, had his breakfast, and then left his apartment to drive to the [office across town], . . . his death would not be compensable." (*State Ins. Fund*, *supra*, 15 Utah 2d at pp. 364–365.) In this case, however, the husband was "going from one office to another," and "the mere fact that he made a stop to have breakfast would not necessarily take him out of the course of his employment." (*Id.* at p. 365.) Accordingly, the widow was entitled to workers' compensation for her husband's death. (*Id.* at pp. 363, 365.)

Our holding does not conflict with these authorities, all of which concern transit between worksites. As we have explained, Doremus worked at the medical center on Mondays, and therefore her home, to the extent arguendo it could ever be

19

deemed a worksite, was not a worksite the morning of the accident. None of Chang's cited authorities suggests that, if an employee sometimes works from home, the home becomes a second worksite for all purposes, even when the employee is *not* working from home. Even in *State Ins. Fund*, in which the husband worked *every day* in an office in the very apartment building where he lived, the Utah Supreme Court noted his widow would not be entitled to workers' compensation had he gone directly from his home to his across-town office rather than first working for a time in his apartment-building office. Thus, Chang's comparison between Doremus's Monday commute and cases concerning travel between worksites is inapt.

Chang argues allowing employees to work both from home and at the office provides a benefit to employers, such as increased productivity and employee satisfaction, and therefore it makes sense to hold employers liable when such "hybrid" employees move between their homes and offices. The question for respondeat superior liability is whether the employee committed the tort within the scope of employment. A hybrid worker who works both in-office and at home is no more acting within the scope of employment when driving to and from work on *in-office* days than is a nonhybrid worker who drives to and from work *every* day. In either case the employee is providing no benefit to the employer apart from traveling to work, a benefit that under the going and coming rule does not trigger respondeat superior liability. To conclude otherwise would eviscerate the going and coming rule for employees who sometimes work from home, thereby discouraging employers from allowing employees that flexibility. We fail to see what policy this serves.

## DISPOSITION

The judgment is affirmed. Respondent Southern California Permanente Medical Group is awarded its costs on appeal.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

M. KIM, J.

Filed 4/28/26

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KAI-LIN CHANG,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP,<br><br>    Defendant and Respondent. | B340770<br><br>(Los Angeles County<br>Super. Ct. No. 22CHCV01194)<br><br>CERTIFICATION AND ORDER FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

The opinion in the above-entitled matter filed on April 9, 2026, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

There is no change in the judgment.

CERTIFIED FOR PUBLICATION.


_____

ROTHSCHILD, P. J.            BENDIX, J.            M. KIM, J.